## GIROD'S LEGATEES *v.* A. D. CROSSMAN et als.

Parties to a judgment homologating a tableau of distribution cannot sustain an action against one who was also a party, to recover the amount decreed to him as legatee, on account of his incapacity to receive the legacy.

Where a testator left $100,000 to the Mayor of the city, to be used in the construction of an orphan asylum in the city of New Orleans, and after his death his estate was so reduced as only to pay one-fourth of this amount—an amount insufficient to fulfil his intention—an investment of the sum at interest by the Mayor, with a view to raise the requisite amount, did not forfeit the legacy.

APPEAL from the Second District Court of New Orleans, *Lea*, J. *Soulé* and *Janin*, for plaintiffs and appellants.

*Biron* and *Train*, for intervenor, cited :

*Prevost* v. *Martel*, 10 R. 511 ; *Compton* v. *Prescott*, 12 R. 56 ; *Succession of Langley*, 5 A. 199 ; Toullier, vol. 5, p. 637, Nos. 677, 678, 679, &c.: Pailliet, notes under Article 1043, C. N.; *Accroissement*, C. N. 1044, 1045 ; C. C. 1696, 1697 ; C. C. 1702, 1703.

Donations *inter vivos* are liable to be revoked or dissolved on account of the following cause : the non-performance of the conditions imposed on the donee. C. C. 1546.

*Livingston*, for defendant :

Judgment of homologation obtained has the authority of the thing adjudged

63

GIROD
v.
CROSSMAN.

against all creditors who were placed on the bilan.  7 N. S. 183 ; 11 L. 571 ; 12 L 121 ; 14 L. 241 ; 3 A. 664, 532 ; 4 A. 450.

The legacy is valid.

The validity of the legacy was attacked in argument on one ground, and that was want of certainty.  Charities are always uncertain—that is, the recipients of the donor's bounty are uncertain.  The charity is for orphans.  Who can tell who will become orphans ?  Who can foretell, when an epidemic decimates our city, who will be called upon to mourn the loss of parents ?  The very purpose of a charity is to succour the unfortunate, to aid and comfort the distressed, and to cheer the afflicted.  It is intended, in the present case, to reach those who, from no fault of theirs, are deprived of their natural protectors.  There is, of course, an uncertainty as to persons, and for this very reason it is a charity, and should be protected.  The authorities are numerous— 2 Vesey, 273 ; 7 Vesey, 76 ; 17 Vesey, 371 ; 1 Vernon, 248 ; 5 Rawle, 151 ; 7 Cranch, 45 ; 6 Peters, 436 ; 2 Peters, 256 ; 2 Howard, 127 ;  Vidal et al. v. Girard's executors, Story's Equity, sections 1169, 1170, 1181.  There must be a certainty as to the object.  It may now be considered an established principle of American law that the court of chancery will sustain and protect such a gift, bequest or dedication of property to public or charitable uses, provided the same is consistent with local law and public policy, when the object of the gift or dedication is specific and capable of being carried into effect according to the intention of the donor.  6 Paige, ch. 649 ; 2 Kent, 286 ; 4 Kent, 508 ; 2 Peters, 566 ; 3 Peters, 99 ; 7 Vermont, 241.

The object is certain and specific.  It is to build an asylum, to be named after the donor, for the benefit of French orphans.  See 17 L. 52, Milne's Heirs v. Milne's Executors ; The Succession of Mary, 2 Rob. 440 ; State v. McDonogh, 8 An. 171.  In all these cases the object was certain, but the persons to be benefited were uncertain.

The legatee is certain.

This objection has been answered.  If the city is considered the legatee, he had official capacity.  C. C. 1536.  Suppose he had no official capacity, that would be no reason why the charity should fail.  Courts of Chancery will never let a charity fail for want of a trustee.  Story's Equity, 1165, 1166, 1167, 1168.  Even where a charity is given that there can be no objects, the courts will order a new scheme to execute it, 1170.  It was admitted at bar in the case of Cincinnati v. White, 6 Peters, 436, that dedication of land for charitable and religious purposes, and for public highways, were valid without any grantee to whom the fee could be conveyed.  2 Dan. 177.  Our courts hold the same doctrine, which comes to us from the civil law.  See Domat, sections 3588, 3590, 3590½.

If the fund is too small, it is not the fault of the legatee, and neither will the legacy lapse for any such cause.  If the identical, the specific object cannot be accomplished, according to the cy pres doctrine of Chancery and recognized here, the fund would be applied in such a manner as to carry out as nearly as possible the intention of the donor.  2 Story's Equity, 1169, 1170 et seq. ; Lewis v. Perpetuity, 426, 454 ; 4 Kent, 508, notes ; Coster v. Lorrillard, 14 Wendell, 265.

MERRICK, C. J.  Nicholas Girod, who died in the latter part of the year 1840, left an olographic will, wherein he recognized eighteen " bons," or acknowledgement of debts to become due by his estate, to as many legatees, to whom he bequeathed $710,000, which was then supposed to be but a part of his large estate.  18 L. R. 394, Girod's Heirs v. Girod's Executors.  This controversy arises out of the first of the dispositions of the will, which recognizes the " bon," executed by Nicholas Girod, in favor of the Mayor of the city of New Orleans.  It is mentioned in the will in these words, viz :

" Un bon à Mr. le Maire de la ville de la Nouvelle Orléans, pour la somme de $100,000, pour être appropriée à la construction d'un édifice portant le nom de N. Girod, dans la paroisse d'Orléans, pour recevoir et venir au secours des orphelins Français, habitant de la Louisiane."

The bon reads as follows : " Bon à Mr. le Maire de la Nouvelle Orléans au

réglement de ma succession pour la somme de cent mille piastres; pour être appropriée à la construction d'un édifice portant le nom de *N. Girod*, dans la paroisse d'Orléans, pour recevoir et venir au secours des orphelins Français, habitant l'Etat de la Louisiane.

Nouvelle Orléans, 23 Décembre 1837.

(Signée,)                                        N. Girod."

The unfortunate termination of a suit in chancery, instituted after the death of *Nicholas Girod*, diminished his estate to that extent, that on a final settlement, it only paid twenty-eight per centum upon the bons or particular legacies. See *Michaud et al.* v. *Girod et al.*, 4 Howard, 503.

The dative testamentary executor, therefore, not having sufficient funds to pay the particular legacies, distributed the assets under a tableau of distribution, to which all the legatees were made parties, and which was duly homologated.

Under these tableaus there were paid to the Mayor of the city of New Orleans, eighteen thousand dollars at one time, and ten thousand dollars on another occasion, making $28,000.

The Mayor thinking this sum insufficient to commence a building, which would carry out the intention of the testator, concluded to invest the fund and accumulate the same by interest, until it should be sufficient. To this end he invested the $28,000 in city bonds, and from 1846 to March 1854, the capital and interest had accumulated to the sum of $40,350 48. Nevertheless, the investment was still continued in city bonds.

This suit is brought by fifteen of the particular legatees, against the former and present Mayors, to compel them to pay over, under the direction of the court, to the other legatees, this fund, to be distributed among them. The present and former Mayors answer the interrogatories on facts and articles propounded to them, and the city of New Orleans appears and answers the petition and defends the suit.

*Jean François Girod* intervened in the suit, as an heir of *Nicholas Girod*, alleging that the will had been faithfully executed, and that the legacy was valid, and joined the defendant in the defence of the action, but prayed, nevertheless, if the legacy should be declared null and void for want of acceptance or capacity in the donee, that it should be paid to intervenor and his co-heirs.

Afterwards, the dative testamentary executors intervened, and alleged the legacy to be a *fidei commissum* and substitution, and pray that the fund may be paid to them for distribution directly, and not under the direction of the Probate Court.

The District Judge dismissed the plaintiffs' demand.

The plaintiffs and intervenor, the appellants, urge as grounds of reversal of the judgment, " that the condition restricting the legacy having never been complied with, the executors discovered that the benificent intention of the testator was destined to be frustrated, both by the incapacity of the devisee to receive and apply it as directed by the will and by other defects, which render it in many respects utterly inexecutable."

That " the payment to *Crossman*, having therefore been made in error, the executors and legatees, and one of the heirs of *N. Girod*, claim the sums paid and the interest accrued to the same, to be refunded to the estate and applied to its liquidation."

They contend that the legacy is null, because:

"1st. Of the want of power in the Mayor of New Orleans to receive it."

"2d. Of the impossibility of its being carried in furtherance of the views of the testator."

"3d. Of the refusal of the devisee to comply with the condition on which it is made to depend."

The first and second of these grounds may be considered together. It is not important to decide whether or not a bequest to the Mayor is a bequest to the corporation of New Orleans; nor whether the Mayor, whose office is perpetual, though constantly changing its incumbent, has capacity to accept donations on behalf of the city or the office which he holds; nor whether there is uncertainty as to the class of persons intended to be benefited by the bequest. We consider that as between the parties to this suit, these questions are no longer open to contest. The plaintiffs and legatees and the executors were parties to the decree of homologation, which directed the payments to be made to the Mayor; they are concluded by the decree which admits that the Mayor was the proper person to receive the fund, and whether he received it for the city, or merely as Mayor, that he has capacity to carry into effect the intention of the testator. The decree has this effect, because it is conclusive upon the question of the Mayor's right to receive the legacy; the thing has been adjudged in his favor. In regard to the intervention of *Jean François Girod*, it does not appear that he was a party to the decree of homologation of the tableau, but whether he were or not, his allegations in his intervention estop him also from contesting the legacy which he has alleged to be valid and to have been legally accepted at the time. Indeed, it is difficult to perceive what interest the heirs can have in contesting a bequest which, if invalid, could not be retained by them, but would necessarily be distributed among the particular legatees, who have received so small a portion of the amount bequeathed to them.

On the third ground, it may be admitted so far as this case is concerned, that the *modus* or charge upon the legacy is in the nature of a condition, and subject to the rules which govern other conditional legacies. Moreau & Carleton Partidas, 2 vol. 739, Law 6; 3 Savigny, 230, book 2, chap. 3, sec. 128. We concur also with plaintiff's counsel, that in order to ascertain how the condition conceeding it to be one, should be performed, we should look at the intention of the testator.

*Cum in conditionibus testamentorum voluntatem, potius quam verba considerari oporteat.* Law 101, tit. 1, Dig. 35. See also Law 19, same title.

If, then, we look at the intention of the testator, we find no difficulty in discovering that he intended to found an institution worthy of his estate, and which should bear his name. It was to be a monument which, while it perpetuated his name, should furnish a home and protection to the French orphans from every part of Louisiana. Twenty-eight thousand dollars were not sufficient for such a purpose. The testator had determined upon one hundred thousand dollars, and it was the first object which presented itself to his mind, when he sat down to draw his will. The legatee, fully impressed with the intention of the testator, that $100,000 should be applied to this purpose, determined to invest and accumulate the fund until it amounted to $100,000. He has prosecuted his object with such success, that he has increased the fund more than eighteen thousand dollars in eight years.

But it is urged, that the city has appropriated the fund to her own use; to

the payment of her debts, and, therefore, the executors or heirs have a right to recall it, on account of the non-performance of the condition upon which it was bequeathed. C. C. 1546, 1703. Had the executors or the heirs paid over to the legatee the one hundred thousand dollars bequeathed by the testator and placed it in the power of the legatee at once to fulfil the condition, all would have been done on their part, and they would have occupied a much more favorable position in questioning the right of the legatee to retain this money. Then they might, perhaps, have complained that the condition had not been complied with. The argument, however, that the funds have been used by the city, is somewhat incompatible with the petition, which demands the funds *as invested;* the bonds and the interest. We see no reason why the Mayor could not invest in city bonds as well as in any thing else. They were not, properly speaking, a debt of the city, as they had a long period to run before maturity. The investment must be considered safe, because the entire wealth of the city is pledged for its future redemption.

It is therefore unnecessary to consider whether the legatees can sue or not. The case is with the defendants on the merits.

Judgment affirmed.