PARDEE, Circuit Judge,
after making the above statement of the case, delivered the opinion of the court.
Under the will of Simon Van Antwerp Sickles, there is no estate to vest in his heirs at law on the failure of any charitable bequest therein named. The intention of the testator in this respect is clear. Aside from bequeathing to the municipal authorities of the city of Hew Orleans all the rest and residue of his estate, both real and personal, wherever situated, to be appropriated to the establishment of a city dispensary for the gratuitous dispensing of medicines and medical advice to the poor of said city, the will provides that, in the event that any of the specific charitable bequests therein made should fail, the executors should pay over the amount of the bequest or bequests so failing to such charitable and educational uses as they should think most in consonance with the testator’s wishes and intention expressed in the will; thus apparently following the doctrine of cy-pres. Under such testamentary disposition, the heirs at law can take nothing on the failure of any charitable bequest. Vidal v. Girard’s Ex’rs, 2 How. 126, 191; McDonogh’s Ex’rs v. Murdoch, 15 How. 367; Prevost v. Martel, 10 Rob. (La.) 512; McDonogh’s Will Case, 8 La. Ann. 171, 220, 253. All the charitable bequests, except the one to the municipal authorities of the city of Hew Orleans, are of specific amounts of money; and it would seem that the bequest to the municipal authorities of Hew Orleans is a'bequest of money, because the will provides that the executors shall dispose of the real estate not specifically devised, collect all claims, dispose of all the estate, and settle and liquidate the same; and it is apparent from the face of the will that the testator’s intention was that the sáid municipal authorities should receive nothing but money. In equity (where, perhaps, this case should have been brought), there is no question on this point. See Macn. p. 29; Pom. Eq. Jur. § 1159. The court of appeals of New York, in Chamberlain v. Chamberlain, 43 N. Y. 431, in dealing with a will containing provisions similar to those in the Sickles will, says:
“If the residuary bequests are valid, there was an equitable conversion of the whole estate into personalty for all the purposes of the will. The gifts were of money, the avails of the real and personal estate, and the conversion of the realty into personalty, under the authority conferred upon the executors, is regarded as having been accomplished at the death of the testator. Leigh & D. Conv. 5, 109; Phelps v. Pond, 23 N. Y. 69; Thornton v. Hawley, 10 Ves. 129; Stagg v. Jackson, 1 N. Y. 206. If, therefore, the disposition of the residue of the estate in favor of the two corporations named as legatees is valid as a bequest of personal property, and to the extent that the two corporations can take under the will, regarding the gift as of personalty, and not of realty, the will must stand. The Centenary Fund Society is a foreign corporation, having its existence under the laws of Pennsylvania, and located within that state. The existence, however, of corporations organized under the laws of a sister state, is recognized by the courts of this state; and they may take property here under wills executed by citizens of the state if, by the law of their creation, they have authority to acquire property by devise or bequest.”
The law of the testator’s domicile controls as to the formal requisites essential to the validity of the will as a means of transmitting property, the capacity of the testator, and the construction of the instrument. Story, Confl. Laws (8th Ed.) § 479ab; Crusoe v. Butler, 36 *874 Miss. 150; Chamberlain v. Chamberlain, supra. Movable property has no locality, and therefore the law of the domicile of the owner governs its transmission, either by last will and testament or by succession in case of intestacy. Story, Confl. Laws (8th Ed.) § 481; Jones v. Habersham, 107 U. S. 179, 2 Sup. Ct. 336; Holmes v. Remsen, 4 Johns. Ch. 460. Although, within the law of the domicile, a will has all the forms and requisites to pass the title to movable property, nevertheless, if the will contains a particular bequest of funds to be transmitted to and administered for particular purposes in another state, the validity of such particular bequest must be tested by the law of the state to which the fund is, by the terms of the will, to be transmitted and administered. Chamberlain v. Chamberlain, supra. Under the laws of the state of New York, as in common-law states generally, a valid bequest for charitable uses is not revocable on account of failure by the trustees to comply with any conditions attached thereto, unless such revocation is expressly reserved in the will. Perry, Trusts, § 744; Reformed Church v. Mott, 7 Paige, 77. A donation to the municipal authorities of the city of Hew Orleans for charitable purposes is substantially a donation to the city for the purposes named, and may be accepted and administered. Rev. Civ. Code, arts. 433, 1549; Succession of Mary, 2 Rob. (La.) 438; Fink v. Fink, 12 La. Ann. 301. Donations to charitable uses are not only permitted in Louisiana, but are highly favored. Succession of Mary, supra; McDonogh’s Will Case, supra; Succession of Vance, 39 La. Ann. 371.
Interpreting the will of Simon Yan Antwerp Sickles according to the laws of the state of Hew York, in which state said Sickles resided, and where his said will was made, we find that the bequest to the municipal authorities of the city of Hew Orleans, for the purposes named, was not revocable for any failure of said authorities to comply with any of the conditions attached thereto; and, testing the validity of said bequest by the law of Louisiana as to the right and power of the municipal authorities of the city of Hew Orleans to accept and administer said trust, the same is valid in all respects. It would seem that what has been said should dispose of this case, because, if the heirs at law have no interest, or if the bequest to the municipal authorities of the city of Hew Orleans is not revocable, the plaintiffs in error cannot complain of the instruction given to the jury to find a verdict for the defendant. The majority of the court, however, are not willing to rest their decision upon either of these points, because the case was tried in the court below, and has been presented by both sides here, as a case arising wholly under the law of Louisiana; and therefore I proceed to consider whether, under the law of Louisiana, a donation mortis causa to municipal authorities for charitable or pious uses, having once vested, is revocable in favor of the heirs at law, whenever the said authorities shall fail to administer the charity, although no revocatory right is reserved by the donor.
Articles 1559 and 1710, Rev. Civ. Code, provide as follows:
“Art. 1559. Donations inter vivos are liable to be revoked or dissolved on account of tbe following causes: (1) Tbe ingratitude of tbe donee; (2) tbe non- *875 fulfillment of the eventual conditions, which suspend their consummation; (3) the nonperformance of the conditions imposed on the donee; (4) the legal or conventional return.”
“Art. 1710. The same causes which, according to the foregoing provisions of the present title, authorize an action for the revocation of a donation inter vivos, are sufficient to ground an action of revocation of testamentary dispositions: provided, however, that no charges or conditions can he imposed by the testator on the legitimate portion of forced heirs, nor can they lose their inheritance for any act of ingratitude to the testator, prior to his decease. That he has not disinherited them shall be sufficient evidence of his having forgiven the offense.”
The learned counsel for the plaintiff in error, in their very lucid brief, contend that the bequest or donation in this case was made on a condition within the meaning of articles 1559 and 1710,—i. e. that a free dispensary should be established by the city; that the city is the donee, and, as such, is subject to the same obligations and governed by the same rules as other donees under said articles, there being no exception made in the case of donations for pious uses; and that the word “conditions,” in article 1559, is used in the sense of “charges,”—i. e. “a donation may be revoked for failure on the part of the donee to execute the charges on him imposed.” It is conceded that, under the civil law prevailing in Louisiana before the adoption •of the 'Civil Code, a donation mortis causa to charitable uses was not revocable for the failure of the authorities to administer the charity, unless the revocation was expressly reserved by the testator in his will.
Under the same law, there was a well-recognized distinction between the mode (or charge) and the condition as affecting donations, .and this distinction is clearly stated in De Pontalba v. New Orleans, 3 La. Ann. 660, which was a suit to annul a donation inter vivos made in 1785 to the city of New Orleans for a leper hospital. The donation was qualified as follows: ‘Which he gives wholly and gratuitously to you, in order that the lepers, of whom there is a large number at present, may be harbored, and in order that the public may perpetually enjoy this endowment,”—and was accepted and applied for some time to the use contemplated by the donor, but was afterwards abandoned as a hospital, the building having been burned. The court says:
“We fake this donation to be a donation sub modo. The laws cited by the plaintiff’s counsel from the Fuero Real and the Partidas were undoubtedly the general rules on the revocation of donations; but those rules were liable to many exceptions, and, in applying them, regard must be had to the distinction made by the civil and the Spanish laws between the mode or charge and the •condition. The inobservance of the condition often avoided the donation, when the inexecution of the charge did not. Thus says Pothier: ‘If the charge on which the bequest is made is not in itself impossible, but fails before the legatee has been put in mora, his obligation to execute it ceases, and the legacy is due. For instance, a testator has given me a legacy, and charges me to be tutor of his children. If the judge, on the advice of the family, has appointed Another tutor, as I can no longer be appointed, I am liberated from the charge, .and entitled to the legacy. In such a case, the legacy made sub modo differs from that made under the condition, if he is tutor of my children.’ Pothier des Testaments, Donations, etc., No. 114. Merlin, deriving the doctrine on the subject from the Roman law, says that a material difference must be made between the motives which the donor mentions as being the cause of the liber.ality, and the conditions he imposes, because, although the failure of a condi *876 tion annuls the donation, it remains valid, although the motives therein expressed he untrue. Merlin, Répert. verbo ‘Donations,’ § 6, No. 5. See, also, (39. 4.) D., 5 De Donationibus. The same distinction, also drawn from the civil law, is recognized by the English courts. The rule there is that, where a legacy is bequeathed for a particular purpose, it is not conditional, so as to fail with the purpose for which it is given. Thus, a legacy made to a woman for the maintenance of her children has been held valid, notwithstanding she has no children, or they all die. So, also, where lands were given to a mother for the education and maintenance of her daughter till eighteen years old, and the daughter died under eighteen, it was adjudged a good term to the mother till the daughter would have obtained eighteen years had she lived. Ward, Legacies, No. 142, and cases there cited. 8 Law Lib. Delvincourt and Duran-ton, upon whose authority the opinion of the court below rests, were misunderstood by the learned judge. We perceive no material difference between the opinion of Delvincourt and those of Merlin and Pothier. Duranton, if his authority was so decided as the judge supposes it to he, ought not to prevail against those three commentators. But he does not greatly differ from them. He merely says that, when a donation is made ob rem futuram, it is a mode affixed to the liberality, and, when the motive fails, the validity of the donation depends upon the intention of the donor to be deduced from the act. 8 Du ranton, No. 548.”
The Civil Code, when adopted, contained this article:
“Art. 3521. From and after the promulgation of this Code, the Spanish, Roman and French laws, which were in force in this state, when Louisiana was ceded to the United States, and the acts of the legislative council, of the legislature of the territory of Orleans, and of the legislature of the state of Louisiana, be and are hqreby repealed in every ease, for which it has been especially provided in this Code, and that they shall not he invoked as laws, oven under the pretense that their provisions are not contrary or repugnant to those of this Code.” Fuqua’s Civ. Code La. art. 3521.
This article, retained in the Code up to 1870, was omitted in the revision of that date. Construing this article, the supreme court of Louisiana, in Reynolds v. Swain, 13 La. 193, said:
“The repeal spoken of in the Code and the act of 1828 cannot extend beyond the laws which the legislature itself had enacted, for it is this alone which it may repeal. ‘Eodem modo quiquit eonstitntnr, eodem modo dissolvitur.’ The civil or municipal law, that is, the rule by which particular districts, communities, or nations are governed, being thus defined by Justinian,—‘Jus civile est quod quisquí sibi populus constituit.’ 1 Bl. Comm. 44. This is necessarily confined to positive or written law. It cannot be extended to those unwritten laws which do not derive their authority from the positive institution of any people, as the revealed law, the natural law, the law of nations, the laws of peace and war, and those laws which are founded in those relations of justice that existed in the nature of things, antecedent to any positive precept. We therefore conclude that the Spanish, Roman, and French civil laws, which the legislature repealed, are the positive, written, or statute laws of those nations and of this state, and only such as were introductory of a new rule, and not those which were merely declaratory; that the legislature did not intend to abrogate those principles of law which had been established or settled by the decisions of courts of justice. * * * We know not any Roman or French statute which was in force in this country at the period of the cession, and to which the repeal in the Code and the act of 1828 could extend. Nevertheless, it is the daily practice in our courts to resort to the laws of Rome and France, and the commentaries on those laws, for the elucidation of principles applicable to analogous cases.”
According to this, the Code did not repeal principles of construction and interpretation, nor the legal meaning of words and terms, but, following the well-recognized rule, used words and terms according to the meaning and interpretation of the same as previously de *877 dared by judicial authority. We find no decision of the supreme court of Louisiana conflicting with De Pontalba v. New Orleans and Reynolds v. Swain, but we find recently, in Succession of Vance, 39 La. Ann. 371, in a suit by the city of New Orleans for a legacy construed to mean and be for the benefit of the indigent insane, and where the defense was that the particular insane asylum mentioned in the will had been closed and abandoned by the city before the city accepted or made demand for the legacy, the court held:
“The executor puts himself out of court by the very attitude which he assumes when he Charges that the legacy has returned to the succession, by reason of the discontinuance of the asylum. He thereby impliedly admits that the legacy has passed from the succession to the legatee, but insists that it has returned. This cannot be under our system of law, which forbids giving and not giving. Had the testatrix thus stipulated, however, that condition, being prohibited, would have been illegal, and, as such, dealt with or reputed as not written. If the legacy has passed, as it surely has, then the succession has been devested absolutely, and the legatee has acquired. An unconditional legatee cannot, after vesting, be devested under any contingency. * * * Here the question is not one of identity. It is simply one of existence or not.— one which is practically whether a municipal corporation has a right to claim a legacy made to an institution at a time under its direct management, and which has been discontinued as a distinct organization after the death of tiie testator. There is no dispute that, if the insane asylum which was in being at that date existed to-day in the same conditions, the city would have a right to recover. But we have said that the place, mode, or manner in which the insane of the city are maintained is insignificant, the intention or object of the testatrix being the relief of those persons of whom the city takes charge and for whom she provides. We therefore conclude that the legacy made by the deceased for such relief, having once vested, cannot be, and has not been, devested, and that consequently the city is entitled to recover it, the same to be used exclusively in furtherance of the benevolence of the testatrix.”
If this language is to be given any force, we must conclude that it means that a donation to a municipality for charitable uses is unconditional, although the special charity to be aided is named, and that such donation is irrevocable for any reason, which is the same as holding that the charge to- apply a charitable donation to the uses of a particular charity is not imposing on the donation a condition, within the meaning of the word in article 1559.
Counsel for plaintiff in error rely upon the case of Girod v. Crossman, 11 La. Ann. 497, which was a suit to revoke and annul a legacy for the neglect and refusal of the devisee to comply with the conditions on which it was claimed the legacy was made. Reliance is placed upon this passage in the opinion of the court:
“On tbe third ground, it may be admitted, so far as this case is concerned, that tbe modus or charge upon the legacy is in the nature of a condition, and subject to the rules which govern other conditional legacies. 2 Moreau & C. 739, Law 6; 3 Savigny, 230, bk. 2, e. 3, § 128. We concur also with plaintiff’s counsel that, in order to ascertain how the condition conceding it to be one should be performed, we should look at the intention of the testator.” Page 500.
This is the mere admission of a contention not necessary to determine (obiter dictum), and falls far short of deciding that modes or charges expressed in a donation to pious uses are conditions, within the meaning of article 1559, Rev. Civ. Code. The real beneficiaries to charitable donations are generally the unorganized poor, and the administration of the charity is necessarily confided to agents. If *878 such charities are not properly administered, or by neglect are allowed to lapse, the fault is not attributable to the beneficiaries, nor always to the public, but generally to the bad judgment or neglect of administrators. The state, as parens patrise, can and should protect all such charities by legislation and through the courts, as is the universal rule in civilized states. Where a municipal corporation is the instituted donee, and its mayor and council misapprehend the limitations and charges of the trust, and thereby delay or wholly fail to carry the charity into effect, it would be contrary to equity, as-well as contrary to the donor’s intention, to decree a revocation (really, a forfeiture) on that account. Besides, such donations are generally intended to and really constitute perpetuities, and, unless-the same expressly appears in the act of donation, it cannot be said that the donor intended that the thing or amount donated should ever return to himself or his estate, much less to his heirs at law.
Enough has been cited and said to show why we find that article 1559, Rev. Civ. Code, was not intended to, and does not, include, among donations liable to be revoked, those donations to pious uses which, otherwise absolute and unconditional, merely specify or direct the particular charity favored by the donee, and why we conclude that, under the recognized jurisprudence of Louisiana, such donations are not revocable. In our opinion, the plaintiffs in error (plaintiffs below) are not entitled to recover in any aspect of the case as presented by the record, and therefore the general charge in favor of the defendant was correct and proper. Judgment affirmed.