## LASWELL v. HUNGATE et al.

(Circuit Court of Appeals, Seventh Circuit. December 19, 1918.)

No. 2620.

1. CHARITIES ☞36—DEVISE TO FREE SCHOOL—CHARGING TUITION AGAINST NONRESIDENT.

Any of the so-called "free" schools of a city, established under the public school laws of the state, for which Const. Ill. art. 8, § 1, and Hurd's Rev. St. Ill. 1917, c. 122, § 127, call, satisfies a devise for support of "a school in said city the tuition of which school shall be free," "such free school as said [city] council shall see fit," though under section 115 tuition is required of nonresident pupils.

2. CHARITIES ☞37—GENERAL CHARITABLE INTENT—CY PRES DOCTRINE.

General charitable intent, making applicable the cy pres rule, were there no existing school to which the devise were applicable, held shown by devise for support of "a school" in a city, "the tuition of which shall be free," "such free school as said [city] council shall see fit," with declaration, "I have made the gift for the benefit of the young * * * and do not wish them to lose the benefit of the gift by the neglect of others."

3. CHARITIES ☞18—WANT OF TRUSTEE—JUDICIAL APPOINTMENT.

A charitable trust will not fail for want of a trustee, or inability of party named to act, but chancery will designate another trustee.

4. CHARITIES ☞20(5)—DESIGNATION OF BENEFICIARY BY CITY.

Even if a city cannot act as trustee of property devised for support of a school in the city, it may, as contemplated by the devise, designate the school to be supported.

5. CHARITIES ☞38—PERPETUITIES ☞4(4)—REQUEST IN CHARITABLE GIFT.

Mere request, in will making devise for support of a school in a city, that the city keep testator's family burial lot in repair, imposes no obligation, much less creates a perpetuity, and so does not affect validity of charitable gift.

6. CHARITIES ☞23—VALIDITY—POSSIBILITY OF MISUSE.

A devise for support of a free school to be designated by a city is not invalid, on the theory that it leaves the city free to designate a school whose teachings are contrary to public policy, as not only must it be presumed that it will properly discharge its duty, but, if it should fail therein, the courts could lend their aid.

Appeal from the District Court of the United States for the Southern Division of the Southern District of Illinois.

Suit by Clara M. Laswell against John Hungate, executor of Benjamin F. Johnson, deceased, and others. Bill dismissed, and plaintiff appeals. Affirmed.

The appeal is from a decree of the District Court dismissing appellant's bill for want of equity appearing upon its face. It appears from the bill that Benjamin F. Johnson, of the city of La Harpe, Hancock county, Ill., died testate in 1906, leaving surviving his widow and one child, the appellant. He left property in Hancock county worth about $300,000, consisting of several thousand acres of land lying outside of the city.

His will, dated in 1895, provided:

(1) For payment of debts.

(2) Bequest of $100 to daughter.

(3) Devise to daughter for her natural life of a quarter section of land in Hancock county, with certain restrictions and limitations respecting payment of taxes and selling or mortgaging her interest.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

(4) Bequest to grandson of a watch and $500.

(5) Bequest to his wife of household furniture and the like.

(6) Devise to wife during her natural life of the family residence at La Harpe and annual income of $1,000.

(7) Provision for fire insurance on the home and personal property.

(8) "None of my real estate is to be sold but rented out and my cash funds loaned on real estate security and the net annual income derived therefrom after paying the legacy to my wife Phebe Ann Johnson and all taxes, repairs, and other proper charges, is to be delivered to the city of La Harpe, Hancock county, Illinois, to be appropriated annually to the support of a school in said city the tuition of which school must be free."

(9) "And it is my will and I hereby direct that on the death of my said wife, Phebe Ann Johnson and my said daughter Clara May Bishop or either of them, the property or funds the deceased had a life interest in, together with all accumulations and any and all other property I may leave not disposed of by the previous provisions of this will shall be delivered o the city of La Harpe, Hancock county, Illinois, to be held (and owned) by said city forever in trust to create and establish a fund to be appropriated the annual income thereof to the support of a school in said city the tuition of which school must be free. The city council of said city managing such funds and estate and paying the annual income to the support of such free school as said council shall see fit. My real estate is not to be sold but rented out and my cash funds loaned on real estate security."

(10) "I hereby constitute and appoint John H. Hungate executor of this my last will, and also trustee to hold, manage and control my estate real and personal and the increase and accumulation thereof until the time arrives as herein limited to vest said real estate in the city of La Harpe, and I direct that the court having jurisdiction of the probating of this will shall require of the trustee such bonds as shall be adequate to protect and preserve the estate and in case of the death or refusal to act of said trustee, then the master in chancery of Hancock county, Illinois, may be appointed his successor under this will."

The codicil, dated in 1897, provides:

"I hereby direct that the taxes and repairs and painting needed on the premises in the said city of La Harpe, county and state aforesaid, which I have willed to my wife Phebe Ann during her natural life is to be paid from the income from my estate and should the buildings be damaged or destroyed by fire or otherwise they are to be repaired or replaced the same as they are with the exception of the barn, if that is destroyed it need not be rebuilt."

"Also any and all leases which I may make which have not expired by their own limitations at the time of my death are to be in full force and effect until they expire by their own limitations."

"And I hereby request the said city of La Harpe through their proper officials to see that my family lot in the graveyard and the stones and monuments thereon are kept in a proper state of repair in consideration of my gift to the said city, but there is no penalty attached if they fail to do so, as I have made the gift for the benefit of the young who are to take their place as men and women in the world and do not wish them to lose the benefit of the gift by the neglect of others."

The will and codicil were duly admitted to probate.

The bill sought to have declared void the eighth and ninth clauses of the will, whereunder the bulk of the testator's property is devised in trust for the support of a school as stated in said clause.

Thomas E. D. Bradley, of Chicago, Ill., for appellant.

D. E. Mack, of Carthage, Ill., and John Hungate, of La Harpe, Ill., for appellees.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] The main ground for the claimed invalidity of clauses 8 and 9

is that there was no school in La Harpe such as is described in these clauses, viz. a school in said city, tuition in which school must be free, and that there is no provision in the will for founding, but only for supporting, a school; that the will and codicil discloses no general charitable intent of the testator whereunder the cy pres doctrine may be invoked, and the devise therefore must fail.

From the bill it appears that there were so-called public schools in La Harpe; indeed, the president and members of the board of education of that city are as such made parties to the bill. It is maintained, however, that under the laws of Illinois the public schools of the state are not schools in which tuition is free, but that these schools are primarily available only to pupils within the school district, that others desiring the benefit of the schools must pay tuition.

One of the institutions upon which we in this country pride ourselves is the system of free schools. It is evident that such schools are not self-sustaining, but funds must be provided to maintain them. This is ordinarily done by public taxation. In making practical provision for public free education each school unit—usually a school district—provides buildings and facilities for the reasonably necessary requirements of the particular unit to be served, but not accommodations in one district sufficient for the world at large. Where, however, it can be done without prejudice to resident pupils, nonresident pupils may be admitted and tuition may be collected from them. Chapter 122, § 115, Rev. Stat. Ill. But these schools are not any the less public or "free" schools in any reasonable application of these terms, or schools in which the tuition must be free, because the educational facilities they afford may be extended to nonresidents and tuition required of such.

If, instead of employing the expression "a school in said city the tuition of which school must be free," the testator had said "a free school of the city," it would hardly be questioned that a public school of the city was within his contemplation. Under the subject of "Powers and Duties of Boards of Education" the Illinois statutes provide:

"First, to establish and support free schools for not less than six nor more than ten months in each year." Chapter 122, § 127, Rev. Stat. Ill.

In the latter part of the ninth clause of the will, referring again to the same object of his benefaction as before referred to, the testator employed the expression "support of such free school as said council shall see fit." Surely the testator should not be held to greater particularity of description or expression than is employed in the statutes of his state whereunder the city of his residence maintained free schools. This statute was enacted in pursuance of the constitutional provision that—

"The General Assembly shall provide a thorough and efficient system of free schools whereby all children of this state may receive a good common school education." Section 1, art. 8, Constitution of Illinois 1870.

Neither the constitutional nor the statutory provision for free schools contemplated that each such school must be free in the sense contended for by appellant, viz. a school wherein tuition shall be free for the whole world.

It is apparent that the testator did not intend to bind the city to limit the benefit of the devise to any particular school. He used twice the expression "a school in said city," employing the indefinite article, and this, with the words "such free school as the council shall see fit," manifests an intent to lodge in the city a discretion as to the school, limiting the benefaction to a school or the pupils of a "school wherein the tuition must be free," or a "free school," but not excluding schools at La Harpe established under the public school laws of the state of Illinois.

[2] But, if appellant's contention in this regard were sound, would not the equitable doctrine of cy pres apply here, so that the devise would in any event be sustained? The doctrine is so well stated in Story's Equity Jur. § 1169, that it may with profit be here quoted:

"Another principle equally well established is, that if the bequest be for charity it matters not how uncertain the persons or the objects may be, or whether the persons who are to take are in esse or not, or whether the bequest can be carried into exact execution or not, or whether the legatee be a corporation capable in law of taking or not, for in all these and the like cases the court will sustain the legacy and give it effect according to its own principles; and where a literal execution becomes inexpedient or impracticable, the court will execute it as nearly as it can according to the general purposes, or as (as the technical expression is) cy pres."

This very statement of the law has been definitely and repeatedly upheld by the Supreme Court of Illinois. Kemmerer v. Kemmerer, 233 Ill. 327, 84 N. E. 256, 122 Am. St. Rep. 169; Crerar v. Williams, 145 Ill. 625, 34 N. E. 467, 21 L. R. A. 454; Heuser v. Harris. 42 Ill. 425.

That the law is as thus stated is not controverted, but it is contended that the devise is of specific nature, not charitable, and does not show a general charitable intent on the part of the testator, and that therefore the cy pres doctrine does not apply. The absence of limitation upon the city beyond the indication that the school shall be free, and the broad general discretion granted it, point strongly to a general intent of the testator to devote his property to charitable purposes. But if this alone were not sufficient, in our judgment the concluding words of the codicil leave no room for doubt as to his general intent to create a charity, when he says:

"I have made the gift for the benefit of the young who are to take their place as men and women in the world and do not wish them to lose the benefit of the gift by the neglect of others."

In this statement of his broad and beneficent purpose there may clearly be read an intent that the gift should not be defeated through strained construction of his phrases, or even through the casual employment of inept words. The limitation of the benefaction to the support of a school, and that a school in which tuition must be free, does not so specifically define and circumscribe the devise as to indicate absence in the donor of a general charitable intent. Vidal v. Girard, 2 How. 127, 11 L. Ed. 205; Perin v. Carey, 65 U. S. 465, 16 L. Ed. 701; Ould v. Washington Hospital, 95 U. S. 303, 24 L. Ed. 450; Russell v. Allen, 107 U. S. 164, 2 Sup. Ct. 327, 27 L. Ed. 397; Sickles v. City of New Orleans, 80 Fed. 868, 26 C. C. A. 204.

It is contended that the clauses provide, not for founding or institut-

ing a school, but only for "support," and that, as the public schools are not intended, the devise must fail for want of an existing school which might be the object of the support. If the testator did not intend a public school to be the beneficiary, and, as stated in the bill, there were then no other schools in the city to which the support might be applied, what could he have intended by the devise? He surely knew the facts; and unless there be imputed to him the intent that his devise should defeat itself for want of an already existing free school in the city, we are not at liberty to give the word "support," as used in the clauses, the narrow and limited construction contended for. On the contrary, the very nonexistence of any such a school would seem only to emphasize our conclusion that the clauses manifest intent of the testator that, in the discretion of the council, the fund be applied to any free school in the city, whether then existing or afterwards brought into being, and whether created or founded wholly or in part out of or as a result of the testator's benefaction, or otherwise. But, aside from this, if the fact were that there was then no existing school to which the devise was applicable, this would serve only to make the more apparent the donor's general charitable intent, and the more certainly would apply the cy pres rule.

[3, 4] It is contended that the city has not the power to take and hold this property or the income, for any such purpose. It is a sufficient reply that a trust will not fail for want of a trustee. If the city cannot act as trustee, a court of chancery will designate another trustee. Even though the city could not take or hold this property or the income from it, we perceive no reason wherefore it may not, as contemplated by the devise, designate the school in whose support the trust fund shall be administered.

[5] As to the contention of invalidity of these clauses because in the codicil the income is to be applied in part, without the designation of what part, to the perpetual maintenance of the family burial lot of the testator, the codicil itself supplies the answer. It creates no such charge on the estate or obligation on the trustee, but expressly negatives any such conclusion. The codicil merely requests the city to see that the lot and monument are kept in proper state of repair. It would seem that, as though in anticipation of such line of attack, he specified, "but there is no penalty attached if they fail to do so." Of course the term "penalty" is not thus used as relating to a fine, imprisonment, or the like, but as indicating the absence of any obligation to comply with the request, and the clear intent and purpose that the charity shall be in no wise thereby periled or penalized. The clause does not assume to impose an obligation, must less to create a perpetuity.

[6] Nor is there merit in the point that, the devise failing to designate the kind of school to be supported, the city might designate some school whose teachings are contrary to public policy. We cannot anticipate that the support will be extended to schools for teaching vice or crime or conceded immorality, if indeed such could be said to come within the designation of "school." It must be presumed that the city will properly discharge its duty; but, if it should fail in this through a perversion of the trust fund from its beneficent and chari-

table purpose, the courts would doubtless deal with such a situation to the end that the true aims and purposes of the devise might be effectuated, not destroyed.

The charge that the city has·abandoned the property and the trust is not supported by any facts stated in the bill from which such conclusion would flow. With the menace of litigation continually before it, first a contest of the will, which failed, then this suit to invalidate the trust clauses, the city has so far been in no situation to carry out the testator's charitable intent. Whatever might be the consequences of abandonment by the city, abandonment does not appear.

The decree of·the District Court is affirmed.