## IN THE MATTER OF THE ESTATE OF BEATRICE GRANT, DECEASED.

### No. 2351.

ARGUED MAY 24, 1938.          DECIDED JUNE 7, 1938.

COKE, C. J., BANKS AND PETERS, JJ.

OPINION OF THE COURT BY COKE, C. J.

This appeal, prosecuted by the Territory of Hawaii, through the attorney general, involves the personal estate of Beatrice Grant, who died at Lanikai, Oahu, on or about July 1, 1937.

Shortly following the death of Miss Grant a holographic will written and executed by her and dated June 17, 1937, was discovered among her effects and was offered for probate in the circuit court of the first judicial circuit by Mrs. Ella Holohan of Honolulu who is named as the sole legatee in the will. In her petition Mrs. Holohan alleged that Miss Grant died in Honolulu and at the time was a resident of the State of California; that deceased left an estate in the Territory of Hawaii consisting of real and personal property of the value of $1000 and upwards. Petitioner requested that letters of administration with the will annexed be issued to the Hawaiian Trust Company, Limited, an Hawaiian corporation.

The attorney general, on behalf of the Territory, filed a contest opposing the admission of the will to probate averring that deceased was a resident of the Territory at the time of her death; that she executed the alleged will within the Territory; that the will was not attested by two or more competent witnesses subscribing their names to the alleged will in the presence of the deceased and that the Territory of Hawaii had an interest in the matter for the reason that if the alleged will was invalid the deceased having left no

heirs-at-law her estate would escheat to the Territory.

The place of domicile of the deceased at the time of her death thus became the main issue between the parties. Under the laws of the State of California a holographic will, that is, one entirely written, dated and signed by the hand of the testator, does not require attestation by witnesses. (See Probate Code of California [1935], ch. II, § 53.) But in Hawaii, under section 4912, R. L. 1935, "no will shall be valid, unless it be in writing and signed by the testator, or by some person in his presence and by his express direction, and attested by two or more competent witnesses subscribing their names to the will, in the presence of the testator." Upon this issue evidence was heard by the circuit judge sitting in probate. Narratively stated, the evidence is to the effect that the deceased, a native of Ireland, resided in California for about twenty years prior to her death; that she was a trained professional nurse and had been employed as such for a number of years at the St. Vincent's Hospital in Los Angeles, California; that she owned and for a time occupied a home at Sierra Madre, a suburb of Los Angeles, but about a year prior to her departure from California she suffered a sunstroke which developed excessive blood pressure. This condition required her to cease nursing activities and she was advised by her physician that a sea trip would be beneficial. She thereupon sold her home at Sierra Madre and took passage for Hawaii, arriving the latter part of February, 1937. After visiting friends for a short time she purchased an inexpensive house and lot at Lanikai, Oahu, where she lived until her death, about July 1, 1937. Aside from the house and lot the deceased owned, at the time of her death, personal property located in the Territory consisting of money in the bank, corporate stock, an automobile and some items of household furnishings.

It is undisputed that the domicile of the deceased, at

the time of her departure for Hawaii, was in the State of California. Whether this domicile was abandoned and a new one acquired in Hawaii can best be ascertained by the acts and declarations of the deceased as shown by the evidence. It appears that the purpose of the deceased's trip to Hawaii was not to locate here but to have the benefit of the sea voyage, hoping thereby to restore her impaired health. Upon her arrival in Hawaii she made it known that she was here for the benefit of her health; that she had not relinquished her position as a nurse at the St. Vincent's Hospital in Los Angeles; and it is strongly to be inferred that she planned to return to California and resume her former vocation when her health would permit. She purchased the Lanikai property upon the assurance given her by the owner's agent that she could dispose of it at any time at a profit. The deceased brought with her from California her automobile bearing a California license plate and number. It is significant that although she used the car in and about Honolulu for approximately four months she retained its California registration. These and other facts strongly tend to indicate an intention on the part of the deceased to remain but temporarily in Hawaii and ultimately to return to California.

The question of domicile is one of both law and fact. A change of domicile from one State to another will depend upon the acts and declarations of the persons concerned. Quite often this intention "may be shown more satisfactorily by acts than declarations." *Shelton* v. *Tiffin*, 6 How. (U. S.) 163. An interesting and instructive case is *Gilbert* v. *David*, 235 U. S. 561. In *Mitchell* v. *United States*, 21 Wall. (U. S.) 350, it is said: "Where a change of domicile is alleged the burden of proving it rests upon the person making the allegation. To constitute the new domicile two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. The

change cannot be made except *facto et animo.* Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the *animus* to change the prior domicile for another. Until the new one is acquired, the old one remains." A domicile is "that place where a man has his true, fixed, and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning." 1 Bouvier's Law Dictionary (3d ed.), p. 915. "Domicil is not commonly changed by presence in a place merely for one's own health." 1 Beale, Conflict of Laws, p. 172. "In general, changes of residence for consideration of health will not result in a change of domicile unless accompanied by a definite intention to abandon the former domicile and acquire a new one. * * * These rules would seem simple, but in the practical application of them to concrete cases considerable difficulty has been experienced." Kennan, Residence and Domicile, p. 259.

In considering the subject courts have altogether too frequently confused "domicile" with "residence." While residence may mean domicile (see *Zumwalt* v. *Zumwalt,* 23 Haw. 376; *In re Tallmadge,* 181 N. Y. S. 336), the two words are not necessarily synonymous. For it is elementary that a person may have many residences but only one domicile. In every case of change of domicile "two things are indispensable: First, residence in a new domicil; and, second, the intention to remain there. The change cannot be made, except *facto et animo." Sun Printing & Publishing Assn.* v. *Edwards,* 194 U. S. 377, 383. (See *Zumwalt* v. *Zumwalt, supra;* Restatement, Conflict of Laws [1934], §§ 9-41.)

In the case at bar the trial judge found that the State of California was the legal domicile of the deceased at the time of her death. After a careful review and consideration of the evidence introduced at the trial we find no error in that conclusion.

If then the legal domicile of the deceased at the time of her death was in the State of California the laws of that State control the formal requisites essential to the validity of her will and if those requirements have been met, the will may effectually dispose of the personal property of the testator regardless of where the will was executed and regardless of where the personalty may be situated. This principle was recognized in *In re Estate of Newell,* 10 Haw. 80, the court saying: "Personal property follows the person (*mobilia sequuntur personam*) ; in other words it is regarded in law as being in the place of its owner's domicile, wherever it may be in fact. The validity of a will, therefore, with reference to personal property, is determined by the *lex domicilii,* and if the will is valid by the law of the place where the testator was domiciled at the time of his death, it is valid everywhere." To the same effect see *In re Harwood,* 172 N. Y. S. 296, where the court said: "It is established law, here as elsewhere, that the validity of a last will is governed entirely and solely by the lex loci domicilii of the testator, and that if sufficient at his domicile at the time of his death such will is valid in every other country in which the testator's movable property is situated." (See also *Sickles* v. *City of New Orleans,* 80 Fed. 868; Story, Conflict of Laws [7th ed.], p. 580; Dicey, Conflict of Laws [2d ed.], p. 667; Thompson, Wills [2d ed.], p. 117; Restatement, Conflict of Laws, §§ 306, 469.) An able and illuminating discussion of the *renvoi* doctrine appears in 51 Harvard Law Review at pages 1165-1208.

But it is urged by the appellant that even if the will in question is valid because it was executed by a person legally domiciled in the State of California, it must first be presented for probate in that State, following which ancillary probate proceedings could be instituted in this jurisdiction. It appears that the deceased left no heirs and no property in the State of California ; therefore the circuitous proceed-

ings suggested by appellant could result in nothing more than the entailing of needless expense, trouble and delay. Fortunately this is made unnecessary by the provisions of section 4774, R. L. 1935, which provides: "In all cases in which any person, whether a citizen of the Territory or otherwise, shall decease, in any part of the Territory, leaving a will in the Territory of his property within its jurisdiction or abroad, or shall have died abroad and there left a will bequeathing or disposing of his property in the Territory, it shall be incumbent upon the person named as executor of such will, or on the person to be benefited thereby, or on the person in whose charge the same was deposited or some person in behalf of those interested, to apply to a circuit judge for probate of such will, and for citation of the witnesses thereto, and of the next of kin of the deceased." The present case falls within the descriptive provisions of the foregoing statute. The testatrix died in Hawaii and left a will in the Territory of property physically located within its jurisdiction. It thus was not only her right but was the duty of Mrs. Holohan, the beneficiary named in the will, to apply for probate of the will in this jurisdiction.

Counsel for appellees conceded in the lower court, as they do here, that the will in question is inoperative to vest, in the legatee named in the will, title to the real estate locally situated and owned by deceased, hence that question is not before us for consideration.

The circuit judge properly admitted the will to probate and the order appealed from is sustained.

*J. Wiig,* Deputy Attorney General (*S. B. Kemp,* Attorney General, with him on the briefs), for the Territory.

*C. A. Gregory* (*Smith, Wild, Beebe & Cades* on the brief) for appellee Mrs. Ella Holohan.

*N. W. Applegarth* (*Anderson, Marx, Wrenn & Jenks* on the brief) for appellee Hawaiian Trust Company, Limited.